v.

**STATE of Alaska, Appellee.**

**M.K.D., Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–2853, A–2862.**

Court of Appeals of Alaska.

Nov. 15, 1991.

David E. George, Anchorage, for appellant S.R.D.

R. Scott Taylor, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant M.K.D.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

## OPINION CORRECTED

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

BRYNER, Chief Judge.

M.K.D. ["M."] and S.K.D. ["S."] were convicted by a jury of multiple offenses arising from the physical abuse of their three children, S.E.D., A.D. and S.D.[1] The abuse allegedly occurred between early 1983 and late 1987. The D.'s appeal, challenging their convictions on various grounds and contending that the sentences they received are excessive. We affirm in part and reverse in part.

## I. SUFFICIENCY OF EVIDENCE

■ M. and S. moved for judgments of acquittal at trial and now challenge the superior court's denial of their motions. In reviewing the sufficiency of the evidence at trial, this court must construe the record in the light most favorable to the state and determine whether fair-minded jurors could conclude that the state met its burden of proving guilt beyond a reasonable doubt. See, e.g., Des Jardins v. State, 551 P.2d 181, 184 (Alaska 1976).

### A. M.'s Convictions

#### 1. Criminal Nonsupport

Counts V, IX, and XIII charged M. with criminal nonsupport for failing to provide her children with necessary medical attention. As to two of the counts the evidence established two separate occasions when M. failed to take one of her children to a physician after S. had beaten and injured the child. One occasion involved A.D.; the other, S.E.D. In each case, a third person eventually intervened, and the child was examined by a physician. The examinations revealed injuries resulting from abuse, but the injuries did not require actual treatment.

■ On appeal, M. claims that the evidence was insufficient to establish criminal nonsupport, because neither child was found to require any medical treatment. The criminal nonsupport statute, however, requires parents to provide their children with necessary "medical attention." AS 11.51.120(b). We agree with the state that "attention" must be construed more broadly than "treatment." It is conceivable that children may suffer injuries sufficiently threatening to require a medical examination, even if that examination ultimately discloses no need for treatment.

In the present case, evidence concerning A.D.'s and S.E.D.'s injuries and the manner in which those injuries were inflicted was sufficient, when viewed in the light most favorable to the state, to permit a reasonable juror to infer that, even though no treatment was required, medical attention was actually necessary to rule out the pos-

---

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. M. was convicted of three counts of assault in the fourth degree and three counts of criminal nonsupport. She received a composite term of three and one-half years, with two years suspended. S. was convicted of one count of assault in the first degree, two counts of assault in the second degree, three counts of assault in the fourth degree, one count of interference with official proceedings, and one count of criminal nonsupport. He received a composite term of eighteen years.

sibility of life-threatening or potentially disabling conditions. The trial court did not err in declining to enter a judgment of acquittal as to these two counts.

■ As to the remaining count of criminal nonsupport, the evidence indicated that S.D. was found to be suffering from a severe case of impetigo upon placement in a foster home. The condition had apparently existed for several months and responded rapidly to medical treatment when the foster parents took S.D. to a physician. M. presented evidence indicating that, before S.D. was placed in foster care, she had attempted to treat the impetigo herself, without medical assistance. Based on this evidence, M. contends that she could not have been convicted of failing to provide treatment.

Viewing the evidence in the light most favorable to the state, however, a reasonable juror could have rejected the defense evidence or found that, despite M.'s efforts to provide home treatment, professional medical attention was actually necessary. The state thus presented sufficient evidence to support the charge, and the trial court did not err in denying M.'s motion for a judgment of acquittal.

### 2. *Fourth–Degree Assault*

■ In Counts VII and VIII, M. was charged with assault in the fourth degree for banging A.D.'s and S.D.'s heads together.[2] At trial, the state neglected to present testimony concerning these charges before resting its case-in-chief. M. immediately moved for a judgment of acquittal. The state realized its oversight and asked to reopen its case. The trial court granted the state's request.

On appeal, M. does not dispute the sufficiency of the evidence presented after the state reopened its case-in-chief. She nonetheless argues that the trial court was bound to rule on her motion for a judgment of acquittal as soon as it was made. According to M., the trial court had no discretion to allow the state to reopen its case

before addressing the motion. M. asks this court to assess the sufficiency of the evidence based on the record as it existed when she first made her motion. In support of her argument, M. relies on a number of federal cases generally holding that motions for judgments of acquittal must be ruled on at the close of the prosecution's case-in-chief and may not be deferred to the end of trial. *See, e.g., United States v. Reifsteck,* 841 F.2d 701, 703 (6th Cir.1988).

Alaska, however, has rejected the approach taken in the federal cases. This court and the supreme court have consistently taken the view that, even when motions for judgments of acquittal are made at the close of the state's case-in-chief, the sufficiency of the evidence at trial may be based on the totality of the evidence, including evidence presented by the defense after the state has rested its case. *See Martin v. Fairbanks,* 456 P.2d 462 (Alaska 1969), *overruled on other grounds, Whitton v. State,* 479 P.2d 302 (Alaska 1970); *Deal v. State,* 657 P.2d 404 (Alaska App. 1983).

Even if Alaska's approach did not differ from the federal approach, the federal cases relied on by M. merely preclude the trial court from waiting until the defense presents its case before ruling on a motion for a judgment of acquittal. Those cases do not purport to restrict the trial court's authority to allow the prosecution to reopen its case-in-chief before the defense presents its case. The trial court has broad discretion to allow the prosecution to reopen. *See, e.g., Miller v. State,* 462 P.2d 421, 428 (Alaska 1969). M. has shown no abuse of that discretion here.

### B. S.'s Convictions

#### 1. *First–Degree Assault*

■ Count II charged S. with assault in the first degree for recklessly causing serious physical injury to S.E.D. by means of a dangerous instrument. AS 11.41.200(a)(1). Prosecution on this count was based on the

---

**2.** M. does not challenge the sufficiency of the evidence with respect to her fourth-degree as-

sault conviction on Count XII.

theory that S. had struck S.E.D. on the mouth with a book or with his hand on repeated occasions over a span of approximately two years. Individual blows resulted in cuts to the underside of the child's lip; eventually, scar tissue accumulated, causing S.E.D.'s lip to be permanently disfigured. The state's theory was that the disfigurement amounted to a serious physical injury. The state reasoned that, because S. had actually inflicted serious physical injury on S.E.D., whatever he had used to inflict the injury (whether a book or his hand) qualified as a dangerous instrument. See AS 11.81.900(b)(11) (defining dangerous instrument to include "anything which, under the circumstances in which it is used ... is capable of causing death or serious physical injury[.]").

The state's evidence established that the disfigurement to S.E.D.'s lip could not have resulted from a single incident of assault. The state presented testimony indicating that the deformation to S.E.D.'s lip resulted from multiple discrete incidents (a minimum of twenty to thirty), each separated by enough time to allow at least partial healing to occur.

The state's evidence, however, specifically established only one incident involving a blow by S. to S.E.D.'s mouth. Even the evidence relating to this incident was presented only in the form of a prior inconsistent statement. At trial, S.E.D. could not recall any occasion when S. struck her in the mouth. To impeach S.E.D.'s testimony, the state called the assistant district attorney who had handled S.'s case before the grand jury. He testified that S.E.D. had told the grand jury that S. once struck her in the mouth with a book, chipping or breaking one of her front teeth. No details of the incident were related.

On appeal, in response to S.'s claim of insufficient evidence, the state insists that the jury could reasonably have found S. guilty of repeated assaults on S.E.D. even though only one episode was specifically proven. The state submits that jurors might have rejected S.E.D.'s out-of-court statement that S. had struck her on only a single occasion. This contention, however, seems problematic, for rejection of S.E.D.'s statement that S. had struck her once would not in itself support a conclusion that he struck her repeatedly; rejection of S.E.D.'s claim would have left the trial record devoid of affirmative evidence linking S. to the repeated series of blows to S.E.D.'s mouth.

The state goes on to cite *Garner v. State,* 711 P.2d 1191, 1193 (Alaska App. 1986), for the proposition that the jury could properly have relied on evidence of S.'s other abusive acts toward his children in determining whether he was responsible for repeatedly striking S.E.D.'s mouth. Again, the state's contention is problematic. *Garner* does permit a jury in a parental child abuse case to consider evidence of a defendant's prior abusive conduct toward the defendant's children. However, here, the state's evidence at trial strongly indicated that the children had suffered repeated physical abuse at the hands of both their parents. Under the circumstances, the evidence of prior abuse afforded little basis for jurors to make a rational decision as to whether S.E.D.'s injuries resulted from repeated blows struck by M., S., or both.

Ultimately, however, we need not decide whether these problems would in themselves require a judgment of acquittal. We find a more fundamental problem here. In charging S. with repeated assaults resulting in serious physical injury inflicted by means of a dangerous instrument, the state necessarily presupposes that numerous discrete nonaggravated assaults may properly be grouped together into a single charge of aggravated assault. The state presents no authority to support such a theory, and all authority we have found points to a contrary conclusion.

■ Assault is not typically regarded as a continuing offense. See, e.g., *Covington v. State,* 703 P.2d 436, 440–41 (Alaska App. 1985) (citing *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 176–77 (1984)). While multiple blows struck in the course of a single, continuous criminal episode may be charged as one assault, separate assaults occur—and must be charged separately—

when blows are struck at clearly separate times and in clearly separate incidents, that is, when one blow is separated from another by a change in purpose, a "fresh impulse," or a different provocation. *See Gray v. United States,* 544 A.2d 1255 (D.C.App.1988). *Compare, e.g., Owens v. United States,* 497 A.2d 1086 (D.C.App. 1985), and *Johnson v. United States,* 398 A.2d 354 (D.C.1979), *with Glymph v. United States,* 490 A.2d 1157 (D.C.App.1985), and *Shivers v. United States,* 533 A.2d 258 (D.C.1987).

Here, the repeated assaults charged in Count II were interspersed over a period of approximately two years and clearly constitute separate criminal episodes.[3] Moreover, this is not an instance in which a single charge encompasses several discrete acts, each of which could independently support a finding of guilt.[4] Rather, Count II appears to encompass a series of fourth-degree assaults, none of which could be deemed aggravated in itself. The charge of assault in the first degree depends entirely on the cumulation of the separate, non-aggravated incidents—both in terms of the seriousness of the injuries inflicted on S.E.D. and in terms of D.'s use of a dangerous instrument.

In the absence of an express statutory provision, we are aware of no authority allowing cumulative harm resulting from separate assaults to be aggregated for purposes of enhancing the class of crime for which a defendant may be convicted.[5] Similarly, although the extent of injury inflicted by an object used in a single

episode of assaultive conduct may be considered in determining whether that object amounted to a dangerous instrument under AS 11.81.900(b)(11),[6] we are aware of no authority allowing injuries inflicted over the course of several separate assaults to be cumulated for purposes of establishing that those injuries resulted from the use of a dangerous instrument.

While the evidence presented at trial in connection with Count II was certainly sufficient to support S.'s conviction for assault in the fourth degree, we conclude that it was insufficient to support his conviction for assault in the first degree. Even when viewed in the light most favorable to the state, the evidence failed to provide a basis for concluding that S. inflicted the alleged serious physical injury on S.E.D. by means of a dangerous instrument on any single occasion. S.'s conviction for first-degree assault must thus be vacated. Because the jury's verdict convicting S. of first-degree assault necessarily encompasses all the elements necessary to a finding of guilt on the lesser-included offense of assault in the fourth degree, the trial court may, on remand, enter a judgment against S. for the lesser offense.

### 2. *Second–Degree Assault*

Counts III and IV charged S. with separate incidents of assault in the second degree for intentionally causing physical injury to S.D. and A.D. by means of a dangerous instrument. AS 11.41.210(a)(1). As to each case, the evidence showed that

---

**3.** The state neither alleged nor proved a common scheme or plan uniting the repeated assaults into a single continuing criminal episode. We express no opinion as to the propriety of aggregating assaultive acts occurring over a lengthy period of time when the individual acts are alleged and shown to be part of an overall criminal scheme or plan which spans the entire duration and involves a single, discernible criminal purpose.

**4.** In such cases, the only significant concern relates to jury unanimity, a problem that can be addressed by an appropriate jury instruction, and one that becomes inconsequential when the circumstances of the case provide adequate assurances of unanimity. *See Covington v. State,* 747 P.2d 550 (Alaska App.1987).

**5.** In contrast, for property crimes, the legislature has expressly authorized aggregation of individual pieces of property for purposes of determining the value of property involved in an offense. *See* AS 11.46.980. Even so, this authorization appears to extend only to individual items involved in a single criminal episode and would not appear to allow aggregation of property involved in separate property offenses.

**6.** *See Konrad v. State,* 763 P.2d 1369 (Alaska App.1988) (indicating that serious physical injury resulting from an episode of assault may be considered *prima facie* evidence, under AS 11.-81.900(b)(11), that the defendant committed the assault by means of a dangerous instrument).

S. beat his victim with a belt. Each child suffered extensive bruising as a result of the beating; neither suffered serious physical injury, and neither actually required medical treatment.

S. argues that, under the circumstances, the evidence was insufficient to establish the use of a dangerous instrument. As we have observed, AS 11.81.900(b)(11) defines "dangerous instrument" to include "anything which, under the circumstances in which it is used ... is capable of causing death or serious physical injury[.]" For purposes of this definition, an instrument's capacity for causing death or serious physical injury is not measured in the abstract; rather, the evidence must establish that the instrument was used in a manner that "actually created a substantial risk of death or serious physical injury." *Konrad v. State,* 763 P.2d 1369, 1372 (Alaska App.1988).

S.'s case presents a close question. S.'s use of a belt on S.D. and A.D. did not result in serious physical injury to either child, and the state presented no expert testimony to establish that his conduct actually created a substantial risk of death or serious physical injury. We nevertheless believe that the evidence as a whole, when viewed in the light most favorable to the state, could support the conclusion by a reasonable juror that S.'s use of a belt posed a sufficient threat of serious physical injury to amount to the use of a dangerous instrument.

S. was charged with assaulting his children not with his bare hands, but with a foreign object—a belt. The instrument is one with which jurors may reasonably be expected to be familiar. Detailed evidence was presented concerning the nature, extent, and duration of the injuries that S. inflicted on his victims with the belt. The jury was also able to observe the relative size of S. and his victims. Thus, from the evidence before it, the jury was capable of making its own determination as to the manner in which S. used the belt against his children and as to the degree of risk that the belt posed under the circumstances.

S. does not complain that the trial court failed to properly instruct the jury on the definition of a "dangerous instrument" or on the need to find an actual risk of death or serious physical injury before determining that an object qualifies as a dangerous instrument. Under the circumstances, we are satisfied that a reasonable juror, viewing the evidence at trial in the light most favorable to the state, could conclude beyond a reasonable doubt that S. assaulted S.D. and A.D. by means of a dangerous instrument.

### 3. *Interference with Official Proceedings*

■■■■ Count VI charged S. with interference with official proceedings by threatening A.D. with intent to influence the child's testimony. AS 11.56.510(a)(1). The incident occurred when the police went to the D. home to investigate a report of abuse. Upon contacting A.D., the police observed injuries that appeared recently inflicted; they decided to remove A.D. from the home.

As the police left with the child, S. pointed his finger angrily at A.D. and yelled, "Remember the rule," in a menacing tone. Testimony at trial indicated that "the rule" was a term used in the D. household to remind the children that they were not obligated to speak to authorities without one of their parents present.

On appeal, S. insists that his reference to "the rule" was in substance no more than a reminder to A.D. of A.D.'s right to remain silent. S. reasons that, accordingly, he cannot properly be deemed to have "threatened" A.D.

This argument, however, views the evidence in the light most favorable to S., not the state. In determining whether S. uttered a threat to A.D., the jury was not bound by the literal meanings of the words he spoke. Rather, it could consider the totality of the evidence, including testimony concerning the tone and manner in which S. spoke the words and S.'s own admission that he "enforced" the rule with his children.

Considering the entire record in the light most favorable to the state, a reasonable juror could readily have concluded that S.'s words were spoken as a threat intended to deter A.D. from cooperating with the authorities. The trial court did not err in denying S.'s motion for a judgment of acquittal.

#### 4. *Assault in the Fourth Degree*

S. was charged in Count XV with fourth-degree assault for recklessly placing A.D. in fear of imminent physical injury. AS 11.41.230(a)(3). The charge arose from an incident in which neighbors heard A.D.'s voice begging S., "Daddy, please don't hit me anymore." A.D.'s pleas were interrupted by loud thumps, which sounded like a body hitting the floor. A.D. was nine years old at the time.

■■■■■ S. argues that it would be speculative to conclude from this evidence that he actually struck A.D. or that his conduct was not justified as reasonable and appropriate discipline. *See* AS 11.81.430(a)(1) (allowing parents to use "reasonable and appropriate nondeadly force" on their children when "reasonably necessary and appropriate to promote the welfare of the child"). To convict S. of fourth-degree assault, however, the state was not required to prove that he actually struck A.D., only that he recklessly placed the child in fear of imminent physical injury. Furthermore, in considering whether S.'s conduct was justified as appropriate parental discipline, the jury was entitled to rely on the totality of the circumstances. Viewing the record in the light most favorable to the state, we conclude that a reasonable juror could find that the state met its burden of establishing S.'s guilt beyond a reasonable doubt. The trial court did not err in denying a judgment of acquittal.

■■■ S. also challenges the sufficiency of the evidence to support his conviction on Count I, which alleged a fourth-degree assault against S.E.D. occurring on or about January 25, 1983. S. argues that the evidence did not establish that he was the one who inflicted S.E.D.'s injuries. Viewing the evidence in the light most favorable to the state, however, the jury could reasonably have inferred that S. was responsible for the injuries to S.E.D. *See Garner v. State*, 711 P.2d 1191, 1193 (Alaska App. 1986) (evidence of past acts of abuse by the defendant against a child could properly be considered to establish defendant's guilt as assailant in the offense charged). We find no error in the denial of a judgment of acquittal on this count.

### II. ADEQUACY OF INSTRUCTIONS ON CRIMINAL NONSUPPORT

■■■ M. complains that the trial court inadequately instructed the jury on the elements of criminal nonsupport. Specifically, M. claims that the trial court failed to advise the jury of the need to find that she acted recklessly with regard to her children's need for medical attention. Because M. did not object to the instructions at trial, we must determine whether her claim involves plain error. Alaska R.Crim.P. 47(b). A plain error is an obvious one that results in substantial prejudice. *See, e.g., Potts v. State*, 712 P.2d 385, 390 (Alaska App.1985); *Carman v. State*, 658 P.2d 131, 137 (Alaska App.1983). Here, we find that plain error occurred.

In *Taylor v. State*, 710 P.2d 1019, 1022 (Alaska App.1985), we construed Alaska's criminal nonsupport statute, AS 11.51.120, to require proof of knowing conduct—that is, a knowing failure to provide support—coupled with recklessness as to the need for support. In the context of the present case, the state was thus required to prove not only that M. knowingly failed to provide medical attention for her children, but also that she recklessly disregarded the fact that such attention was actually necessary.

The jury instructions specified only that M. was required to have acted knowingly in failing to provide medical attention. The instructions did not specify the need to find recklessness with regard to the fact that the children actually required medical attention.

In previous cases, we have found plain error when instructions incorrectly in-

formed a jury of the essential elements of an offense. *See, e.g., Reischman v. State,* 746 P.2d 912, 915–16 (Alaska App.1987). On the other hand, we have declined to find reversible error when the trial record as a whole established that incomplete jury instructions had no significant influence on the jury's decision. *See, e.g., Bowell v. State,* 728 P.2d 1220, 1224 (Alaska App. 1986); *Reynolds v. State,* 664 P.2d 621, 627–28 (Alaska App.1983). The state argues that M.'s case falls into the latter category. According to the state, in the absence of a specific instruction to the contrary, the jury in all likelihood believed that it was required to find that M. acted knowingly not only in failing to provide medical attention to her children but also in recognizing that her children actually required such attention.

The record does not bear out the state's assertion. As to each of the criminal nonsupport charges, M. effectively acknowledged that she had knowingly failed to take her child to a physician. The principal issue was the extent to which her decision to forego medical attention was justified. The evidence on the issue was far from overwhelming.

As to two counts, it was undisputed that M.'s children did not actually require any medical treatment. The primary issue was whether, despite the lack of any need for treatment, the children required a medical examination to rule out the need for treatment. On that score, the only expert testimony presented by the state indicated, as to one of the two children, that a medical examination was "appropriate." As to the third criminal nonsupport charge, evidence was presented to establish that medical treatment for A.D.'s impetigo was actually necessary. However, M. presented evidence in response indicating that she had attempted to provide appropriate treatment on her own, without a physician. The crucial issue was thus whether and to what extent M. recognized her child's need for treatment by a physician.

During both the opening and closing portions of its final argument to the jury on the criminal nonsupport charges, the prose-cution emphasized that it was undisputed that M. had failed to take her children to a physician. With regard to M.'s awareness of her children's need for treatment by a physician, the prosecution repeatedly asked the jury to consider whether a "reasonable parent" or "reasonable person" would have sought medical attention for her children under similar circumstances. Given the state's emphasis on the reasonable parent standard and the trial court's failure to instruct that M. was required to have recklessly disregarded her children's need for medical attention, there appears to us to be a substantial likelihood that M.'s convictions for criminal nonsupport were in essence based on a finding of civil negligence—in other words, on the jury's conclusion that M. did not adhere to the standard of a reasonable parent in failing to recognize her children's need for medical attention. Had the trial court properly instructed on recklessness, the jury could not have found M. guilty for simply failing to act as a reasonable parent would have under the same circumstances; instead, it could have found guilt only upon concluding that M. had actually been aware of and consciously disregarded a substantial and unjustifiable risk that her children required the attention of a physician.

We conclude that the failure to give an appropriate instruction on the applicable mental state amounted to plain error and requires M.'s convictions for criminal nonsupport to be vacated.

S. was also convicted of one count of criminal nonsupport, based on the allegation that he failed to secure medical treatment for A.D.'s impetigo. On appeal, S. has joined in M.'s challenge to the adequacy of the instructions on the offense. At trial, S.'s theory of defense was that he reasonably relied on M.'s efforts to treat A.D.'s impetigo herself. Under the circumstances, we find no basis for distinguishing S.'s situation from M.'s and conclude that reversal of S.'s criminal nonsupport conviction is also required.

### III. OTHER ISSUES

M. and S. raise a number of other claims that we find to be without merit. They

first contend that their charges should have been dismissed for preindictment delay. M. and S. argue that, given the length of the delay in their case, they should be excused from proving prejudice. Alternatively, they contend that they suffered prejudice because their witnesses' memories and effectiveness faded. These arguments are foreclosed by our recent decision in *State v. Mouser,* 806 P.2d 330 (Alaska App. 1991), which is controlling here.

M. and S. next contend that their indictment should have been dismissed because inadmissible evidence was presented to the grand jury. The only conceivable prejudice stemming from any flaws in the grand jury hearing, however, relates to S.'s felony charges, since the state was entitled to proceed on all misdemeanor charges against M. and S. without any indictment at all. We have separately determined that the evidence at trial was insufficient to support S.'s conviction for assault in the first degree. We thus consider the present issue only as it relates to the remaining three felony counts against S.

As to those counts, our review of the record satisfies us that, even when all arguably improper evidence is excised, ample evidence remained to support the indictment. We further find no basis for concluding that the arguably improper evidence appreciably affected the grand jury's decision. *See Panther v. State,* 780 P.2d 386 (Alaska App.1989). Accordingly, we conclude that the superior court did not err in denying M. and S.'s motion to dismiss their indictment.

■ The D.'s further contend that the superior court erred in refusing to suppress as involuntary various statements they made to social workers during preindictment child-in-need-of-aid proceedings relating to their children. We assume for purposes of this decision that the purported conduct of Division of Family and Youth Services (DFYS) personnel would qualify as "coercive police activity" within the meaning of *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *see also Macauly v. State,* 734 P.2d 1020, 1023 n. 2 (Alaska App.1987). Here, the superior court expressly found that DFYS workers made no overt threats to remove M. and S.'s children from their home or to terminate their parental rights if M. and S. did not confess to their abuse of the children. The superior court further expressly found that the D'.s were at all times cognizant of the risk associated with making any potentially incriminating statements to DFYS workers. These findings are not clearly erroneous. In fact, it appears from the record that, throughout the course of their dealings with DFYS personnel, the D.'s were quite circumspect with regard to the disclosure of any potentially incriminatory information.

Having independently considered the totality of the circumstances in light of the superior court's factual findings, we conclude that statements made by the D.'s to DFYS workers were not involuntary.[7]

### CONCLUSION

In summary, S.'s conviction for assault in the first degree must be VACATED. A judgment for the lesser-included offense of assault in the fourth degree may be substituted therefor. On remand, a hearing will be necessary for imposition of a sentence for that offense. S.'s and M.'s convictions for criminal nonsupport must be vacated. Since we have found that sufficient evidence was presented on those charges to withstand a motion for a judgment of acquittal, the state will not be precluded from seeking a retrial on remand. In all other respects, the convictions are affirmed.[8]

---

7. This case is readily distinguishable from *Webb v. State,* 756 P.2d 293 (Alaska 1988), which the D.'s liken to their own situation. Here, no statement was ever demanded of the D.'s as a *quid pro quo* for custody of their children. Furthermore, no illegal seizures or detentions were involved.

8. Our disposition makes it unnecessary to consider the parties' sentencing arguments at this time.

AFFIRMED in part and REVERSED in part.