NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JONATHAN CLARK, | ) | |
| | ) | Supreme Court No. S-14456 |
| Appellant, | ) | |
| | ) | Superior Court Nos. |
| v. | ) | 1KE-07-00273 CI and |
| | ) | 1KE-10-00274 CI |
| | ) | |
| PERLITA CLARK, | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| Appellee. | ) | |
| | ) | No. 1438 – September 26, 2012 |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, William B. Carey, Judge.

Appearances: Deborah Burlinski, Anchorage, for Appellant. Notice of nonparticipation filed by Leif A. Thompson, Leif Thompson Law Office, Ketchikan, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, and Stowers, Justices, and Eastaugh, Senior Justice.**

## I.    INTRODUCTION

Two parents disputed the custody of their minor children. At trial the father argued that the mother had a history of perpetrating domestic violence; the mother contended that the father had substance abuse problems that interfered with his care of

---

\*       Entered under Appellate Rule 214.

\*\*      Sitting by assignment made under article IV, section 16 of the Alaska Constitution and Alaska Administrative Rule 23(a).

the children. The trial court decided that it was in the children's best interests for the parents to have joint legal and physical custody. The court declined to find that any domestic violence committed by the mother was sufficient to trigger the statutory presumption against awarding custody to her. Because the court implicitly found that the mother did not have a history of perpetrating domestic violence and because this implicit finding was not clearly erroneous, we affirm the superior court's decision.

## II.     FACTS AND PROCEEDINGS

Jonathan and Perlita Clark were married in February 2003 in the Philippines and moved to Ketchikan in March 2004. Their first child, Joshua, was born in Ketchikan in 2005. Perlita returned to the Philippines in 2007 to visit family, and Jonathan obtained a default divorce in her absence. The court in the divorce proceeding awarded the parties joint legal custody of Joshua, awarded Jonathan primary physical custody, and granted Perlita reasonable rights of visitation. After Perlita returned from the Philippines, the parties entered into a shared physical custody agreement giving Perlita an unspecified 30 percent custody. In early 2008 Perlita and Jonathan began living together again, but they did not remarry. They had a second child, Warren, in 2009.

In 2008 Jonathan was arrested for felony driving under the influence (DUI). He was also charged with child endangerment because Joshua, who was three at the time, was riding in the vehicle's back seat "not restrained in a child's car seat." As a result of this arrest, Jonathan participated in the Therapeutic Court program. According to the custody investigator, Jonathan was jailed "brief[ly]" in October 2010 for submitting Joshua's urine instead of his own for a urinalysis. Jonathan acknowledged using methamphetamine at about the same time. There was some evidence that Jonathan also used methamphetamine in June 2011, but the court did not make an express finding that he had. The trial court noted that Jonathan had been arrested twice for possession of methamphetamine; the custody investigator reported that these arrests occurred in 1997.

Shortly before the custody trial, Jonathan "submitted a diluted urine sample" and spent a short time in jail as a result.

On April 27, 2010, Perlita was arrested for hitting Joshua in the face with a belt. According to the police officer who investigated the incident, Joshua had a red mark on one cheek and a crescent-shaped red mark near his jaw. Perlita was initially charged with fourth-degree assault but eventually pleaded to the lesser charge of harassment in the second degree.

Jonathan filed a domestic violence case and obtained a domestic violence restraining order against Perlita based on the belt incident, but the domestic violence case was later dismissed.[1] Before the domestic violence case was dismissed, Jonathan also filed a custody case and requested a custody order for Warren that was "similar to the order in effect regarding his brother Joshua." On July 15, 2010, the court granted Perlita unsupervised visitation with the children every other weekend from Friday evening to Sunday evening and from Monday to Wednesday evening each week she did not have weekend visits. In October 2010 Perlita moved to modify custody in the divorce case based on, among other factors, Jonathan's use of methamphetamine and his short incarceration for substituting Joshua's urine for his own.[2] The court held several hearings in the custody and domestic violence cases, including a half-day hearing in April 2011 and a trial in July 2011.

At the April hearing, Jonathan testified that Perlita sometimes pinched him and Joshua and that the pinching hurt; he said he did not know the reason for the pinching. He also testified that Perlita threw things, such as a TV remote control and a

---

[1]    The record on appeal does not contain a copy of the restraining order.

[2]    At the time Perlita filed the motion to modify, staff at the Therapeutic Court were considering terminating Jonathan from the program.

glass vase; according to Jonathan, she never hit him with the objects, but she broke the TV remote. Jonathan's daughter from a previous marriage said that Perlita had thrown a telephone at her about four years before; she said that Perlita also struck her during that same time period. The daughter testified that the telephone hit her and that it "hurt a little bit." Perlita generally denied these allegations, although she did admit to throwing the TV remote at Jonathan once or twice. Perlita testified that Jonathan hit Joshua with a belt for discipline and told her that Joshua did not respect her because she did not discipline him with a belt.

At trial, Perlita presented testimony from a former coworker that Jonathan had called Perlita repeatedly at work to make sure she was there. The witness testified that she considered the telephone calls harassment. Jonathan denied calling Perlita excessively at work. Another witness, a counselor who saw the family twice for therapy, testified that Perlita reported that Jonathan had shoved her. The custody investigator wrote that the "reported incidents of domestic disturbances in the Clark[s'] relationship do not rise to the level of a legal finding of domestic violence." Both the counselor and the custody investigator expressed concern about Jonathan's controlling or demeaning behavior toward Perlita.

In closing argument at trial Jonathan's attorney said there was "a pretty good argument" that Perlita's custody and visitation should be limited because of multiple incidents of domestic violence; to support this argument he pointed to the testimony about pinching and about Perlita throwing a telephone at Jonathan's daughter, in addition to the conviction related to hitting Joshua with a belt.

In its oral findings at the conclusion of the July 2011 trial, the court said it was "not prepared to find that [Perlita had] committed acts of domestic violence such as would limit her ability to have custody of the children." The court was "concerned about the testimony about the pinching," saying that it sounded "silly and maybe playful," but

that it was "apparently painful to somebody." Noting Perlita's completion of a parenting class and her efforts over the past year or so, the court said it thought she had "gotten past" any issue she may have had with domestic violence. The court did not make further oral findings about other allegations of domestic violence.

In its written decision, the court did not discuss AS 25.24.150(g)-(j), the statutory subsections pertinent to awards of custody to a parent with a history of perpetrating domestic violence; instead it extensively discussed the best-interest factors set out in AS 25.24.150(c). The court granted the parents shared legal and physical custody of the children and gave them alternating physical custody on a weekly basis. In its general discussion the court outlined Jonathan's criminal and substance abuse history, including his arrest for felony DUI and endangering a child. The court said that the criminal charges Perlita faced in 2010 for hitting Joshua with a belt "ha[d] presented a substantial roadblock to her efforts to have custody awarded to her."

The court decided that Perlita was somewhat better able than Jonathan to meet the children's needs. The court noted in its written order that Perlita had "recently obtained a mental health assessment which was generally positive."[3] The court expressed concern that Jonathan's family members were "dismissive and contemptuous" of Perlita; it wrote that Jonathan and his family treated her with disdain, and it thought this behavior had a negative impact on the children. The court found that the children would benefit from spending more time with Perlita because it would give them "balance." It ordered that the children continue to attend the same school, church, and daycare.

In its discussion related to evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of domestic violence

---

[3] A copy of a mental health evaluation is not in the record. Jonathan does not dispute on appeal the court's statement that Perlita underwent the evaluation or that it was positive.

between the parties,[4] the court decided that Joshua had "been the target of inappropriate corporal punishment, likely by both parties" and had been "a passenger in a vehicle operated by Mr. Clark while he was intoxicated." The court found that there had "been emotional and verbal abuse, largely by Mr. Clark directed against Ms. Clark, which ha[d] left a mark on Joshua." It noted that Perlita could "engage in angry outbursts." The court "agree[d] with . . . the custody investigator, that until both parties learn to manage their outbursts, the children will continue to suffer." The court made no finding that either parent had a history of perpetrating domestic violence.

Jonathan appeals the court's final custody determination. Perlita filed a notice of nonparticipation.

## III. STANDARD OF REVIEW

We review a trial court's custody order for an abuse of discretion.[5] "Abuse of discretion in child custody cases occurs when a trial court considers improper factors or improperly weighs factors in its decisional process."[6] Factual findings are reviewed for clear error; we find clear error "when, after review of the entire record, 'we are left with a definite and firm conviction' a mistake occurred."[7] The trial court must make findings that "either give us a clear indication of the factors which the superior court

---

[4]     AS 25.24.150(c)(7).

[5]     *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010) (citing *Jaymot v. Skillings-Donat*, 216 P.3d 534, 538 (Alaska 2009)).

[6]     *Id.* (citing *Jaymot*, 216 P.3d at 538-39).

[7]     *Id.* (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[8]

## IV. DISCUSSION

### A. The Court Properly Applied AS 25.24.150(g)-(j).

Jonathan argues that the trial court did not make adequate findings about domestic violence under AS 25.24.150(g)-(j). He contends that the court's statement that it was not prepared to find that Perlita had committed acts of domestic violence such that her custody would be impacted did not adequately address the issue of domestic violence. The question Jonathan presents has two parts: whether the court made findings about a history of perpetrating domestic violence and whether its findings were clearly erroneous.

We have held that "when the record shows that domestic violence has occurred and the court so finds, it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence."[9] The trial court complied with this mandate with respect to Perlita. By stating that it was not prepared to find that she had committed acts of domestic violence that would impact her custody, the court explicitly recognized the issue and implicitly decided that she did not have a history of perpetrating domestic violence.

Jonathan contends in essence that the court's finding was clearly erroneous. He first argues that Perlita caused serious physical injury to Joshua when she hit him with the belt. Alaska Statute 25.24.150(h) provides in pertinent part that a parent has a history of perpetrating domestic violence "if the court finds that, during one incident of domestic violence, the parent caused serious physical injury." Jonathan asserts here that Perlita's hitting Joshua with a belt met this standard because it fell within the following definition

---

[8]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 139 (Alaska 1997).

[9]     *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007).

of serious physical injury: "physical injury caused by an act performed under circumstances that create a substantial risk of death."[10]  Jonathan does not explain how the incident met this definition.  Jonathan did not make this argument at trial, so he has waived it.[11]

Even if we evaluated this argument under the plain error standard,[12] we would conclude that the court did not commit plain error in failing to find that Perlita caused serious physical injury when she hit Joshua with the belt.  The record contains little detail about the incident.  No documents related to Perlita's criminal case or the domestic violence proceeding are in the record, nor are there any medical records.  According to the police officer who investigated the incident, Joshua had two red marks on his face; the officer thought that the marks could have been made by a belt buckle he saw in the Clark household, but he did not hold the belt buckle to the marks to see if they matched.  The custody investigator did not discuss the incident in detail in his report.  Nothing in the record suggests that the circumstances of the incident created a substantial risk of death.

In two reported cases, injuries that appear similar to Joshua's were considered not to be serious physical injuries.  In *Parks v. Parks*, we affirmed a trial

---

[10]    AS 11.81.900(b)(56)(A).

[11]    *Starr v. George*, 175 P.3d 50, 59 (Alaska 2008) (citing *State Farm Mut. Auto. Ins. Co. v. Lawrence*, 26 P.3d 1074, 1077-78 (Alaska 2001)) (declining to address an argument appellants failed to raise adequately at trial and, therefore, failed to preserve for appeal).  At trial Jonathan argued that Perlita had engaged in more than one act of domestic violence, pointing to the allegations of pinching and the allegation that Perlita threw a telephone at Jonathan's daughter, in addition to the incident with the belt.

[12]    *See Parks v. Parks*, 214 P.3d 295, 300 n.12 (Alaska 2009) (discussing plain error and finding that trial court's failure to consider alleged violations of protective order in evaluating whether AS 25.24.150(g) applied was "sufficiently obvious to be plain error").

court's finding that an incident of domestic violence in which the husband "threw things at [his wife] and tore off some of her clothes, resulting in multiple bruises," did not result in serious physical injury.[13] In *S.R.D. v. State*, a case involving a parent's assault conviction for beating his children with a belt, the court of appeals noted that the children "suffered extensive bruising as a result of the beating," but that they had not "suffered serious physical injury" and had not "actually required medical treatment."[14] The trial court did not plainly err here by failing to find that Perlita had a history of perpetrating domestic violence on the basis of serious physical injury to Joshua. There is no indication that he required medical treatment, and the record does not support Jonathan's claim that the incident created a substantial risk of death.

Jonathan alternatively argues that the court made inadequate findings about other allegations of domestic violence, specifically his allegations that Perlita pinched him and Joshua.[15] If a court finds that a parent has "engaged in more than one incident

---

[13]     *Id.* at 298, 301.

[14]     *S.R.D. v. State*, 820 P.2d 1088, 1094 (Alaska App. 1991). Although the court of appeals concluded that the use of a belt did not result in serious physical injury, it upheld the parent's conviction for second-degree assault because "the evidence as a whole, when viewed in the light most favorable to the state, could support the conclusion . . . that [the parent's] use of a belt posed a sufficient threat of serious physical injury." *Id.*

[15]     At trial Jonathan presented evidence that Perlita threw and destroyed a TV remote control and threw a telephone that hit his daughter. His trial attorney argued that throwing the telephone was a possible second incident of domestic violence, which would limit Perlita's custody. Jonathan's brief on appeal does not discuss these incidents and alludes only to "Perlita's various acts of domestic violence," so we do not consider them. *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."). *Cf. Stephanie F. v. George C.*, 270 P.3d 737, 751 (Alaska 2012) (holding that punching hole in door of family home was criminal mischief, a crime of

(continued...)

of domestic violence," the parent has a history of perpetrating domestic violence per AS 25.24.150(g).[16] Jonathan first contends that the trial court "expressly found" that Perlita had committed other acts of domestic violence. We disagree with this contention: The trial court said that it was concerned about the pinching, but also said that the pinching sounded "playful" and "silly," and it found that Perlita had "gotten past" any issue she might have had with domestic violence. And the court expressly declined to limit Perlita's custody despite the allegations of domestic violence, suggesting to us that its concerns about pinching did not amount to a finding that Perlita had committed a second act of domestic violence.

The court acted within its discretion in declining to find that the pinching allegation was a second incident of domestic violence. We give particular deference to a trial court's findings when they are based on oral testimony "because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[17] Jonathan testified that he had seen Perlita pinch Joshua and make him cry; his attorney's questions to Perlita suggested the pinching was used as discipline.[18] With respect to the allegations that Perlita pinched Jonathan, Jonathan testified that he did not know why she pinched him and that she had done so for three or four years. Perlita denied pinching

---

**15**   (...continued)
domestic violence); *Parks*, 214 P.3d at 300 (noting that throwing water at wife was domestic violence if husband attempted to place wife in fear of imminent physical injury, and remanding for factual findings).

**16**   AS 25.24.150(h).

**17**   *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 174 P.3d 217, 222 (Alaska 2007)) (internal quotation marks omitted).

**18**   *Cf.* AS 11.81.430(a)(1) (permitting parent to use reasonable corporal punishment).

either Jonathan or Joshua; she testified that Jonathan pinched her. Given the conflicting and brief testimony about pinching, the trial court was well within its discretion in declining to find that the pinching was a second incident of domestic violence.

Jonathan relies on *Heather W. v. Rudy R.*[19] to ask for a remand so the trial court can "determine whether Perlita's prior conduct constitutes a history of domestic violence." *Heather W.* is distinguishable: There the trial court refused to consider evidence of domestic violence that predated a shared custody agreement; we remanded for an evidentiary hearing related to the allegations that the court refused to consider.[20] Here, in contrast, Jonathan presented evidence related to domestic violence and argued that Perlita should not be awarded custody because of incidents of domestic violence; the court considered and evaluated the evidence but decided the evidence was insufficient to require application of the statutory presumption. Because the trial court has already considered the evidence, there is no need for a remand.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's order.

---

[19] 274 P.3d 478 (Alaska 2012).

[20] *Id.* at 485-86.